IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Luis Adames Milan, et al.,

    Plaintiffs,

        v.

Centennial Communications Corp., et al.,

    Defendants.

**Civil No. 05-1377 (GAG)**

**OPINION AND ORDER**

Former employees of cable company and their spouses brought this action, alleging that cable company and related companies violated the Worker Adjustment and Retraining Notification Act ("WARN Act" or "Act") and Puerto Rico Law No. 80 ("Law 80") when they laid off the employees. The matter is before the court on Defendants' motion for summary judgment. In this motion, Defendants argue that Plaintiffs' complaint should be dismissed as to some or all of the Defendants because: (1) the separation agreements signed by some Plaintiffs bar their claims; (2) Plaintiffs' termination did not constitute a mass layoff as required by the WARN Act; (3) Plaintiffs received compensation for any Law 80 indemnity; and (4) not all Defendants are proper parties to this case. After reviewing the pleadings and pertinent law, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' summary judgment motion (Docket No. 54).

**I.    Relevant Factual and Procedural Background**

The following undisputed material facts emerge from the parties' statements of facts, credited only to the extent either admitted or properly supported by record citations in accordance with Local Rule 56 and viewed in the light most favorable to Plaintiffs. Centennial Puerto Rico Cable TV Corp. ("CPRCTV") was a Puerto Rico corporation dedicated to offering cable television and high-speed cable modem services to subscribers in Puerto Rico. See Docket No. 54-2 at ¶ 1. Until December 28 2004, Centennial Communications Corp. ("CCC") owned CPRCTV. Id. at ¶ 2. On that date, CCC sold CPRCTV to the Puerto Rico Cable Acquisition Company, Inc. ("PRCAC"), a company owned by an affiliate of Hick, Muse, Tate & Furst, Inc. ("HMTF") Id. at ¶¶ 3, 4.

All Plaintiffs were employees of CPRCTV prior to its sale on December 28, 2004. CPRCTV terminated some of the Plaintiffs before the sale. PRCAC terminated the remaining Plaintiffs after the sale. Of special interest to this case is a group of Plaintiffs laid off by PRCAC as a part of a reduction-in-force plan implemented on January 18, 2005. On that date, this group of Plaintiffs attended a conference at the Ponce Hilton. Id. at ¶ 17. At that conference, PRCAC terminated the group. Id. at ¶ 18. The layoff affected 85 employees: 71 regular employees, 11 temporary employees, and three part-time employees. Id. at ¶¶ 9, 10. At that time, PRCAC had a total of 228 employees. Id. at ¶ 11.

After being terminated, the fired employees received a separation agreement, previously approved by attorney Domingo E. Chicon ("Chicon"), legal counsel to Puerto Rico's Department of Labor. Id. at ¶ 15. The separation agreement provided the fired employees with a severance payment and continued medical plan benefits until March 31, 2005. Id. at ¶ 12. In exchange for receiving these benefits, the fired employees would release PRCAC, Centennial Puerto Rico Operations Corp. ("CPROC"), and CPRCTV from all claims relating to their employment. Id. at ¶¶ 14. CPROC is a subsidiary of CCC that provides wireless and broadband communications services to its customers in Puerto Rico. Id. at ¶ 2. The separation agreement gave the fired employees seven days to withdraw their consent. See Exhibit C, Docket No. 54. At the conference, Chicon, in the absence of PRCAC management, read the separation agreement with the fired employees and explained what each paragraph meant, its scope and all of the consequences of agreeing to the terms contained in each paragraph. See Docket No. 54-2 at ¶ 23. Eighty-four of the 85 terminated employees signed a separation agreement. Id. at ¶ 29.

On January 27, 2005, attorney David Castillo, representing 59 employees who had executed a separation agreement, submitted a letter to PRCAC indicating their intent to withdraw their consent to the agreements. Id. at 35. Subsequently, attorney Castillo sent two more letters in February of 2005 indicating that 16 additional employees were retracting their consent. Id. None of the employees who retracted their consent returned the compensation and benefits they received pursuant to the terms of the agreement. Id.

On April 6, 2005, Plaintiffs brought this suit, alleging that Defendants' reduction-in-force plan violated the WARN Act, 29 U.S.C. § 2101 et seq. because Defendants did not give the laid-off employees a 60-day termination notification. See Docket No. 1. On February 13, 2006, Plaintiffs amended their complaint to allege that Defendants' reduction-in-force plan violated Law 80, P.R. Laws Ann. tit. 29 § 185 et seq. and include seven additional Plaintiffs. See Docket No. 38.

On February 8, 2006, the court dismissed the complaint as to Plaintiff Roberto Samalot on the ground that Mr. Samalot had reached a settlement with Defendants. See Docket No. 32. For the same reason, the court dismissed the complaint as to Plaintiffs Luis Cajigas Lopez, Jessica Santiago and Sonia Baez Rivera on January 31, 2007. See Docket No. 79. On July 2, 2007, the court dismissed the complaint as to all Plaintiffs who executed a separation agreement and were parties to prior local actions in which the Commonwealth courts held that the agreements are valid. See Docket No. 92; Milan v. Centennial Commc'ns Corp., __ F.Supp.2d __ (D.P.R. 2007). Thus, only ten Plaintiffs remain in the instant case: Rosendo Espada, Conrado Mercado Vargas, Vicente Marrero, Willington Rodriguez Linares, Jorge Rodriguez Rodriguez, Wilfredo Rodriguez Morales, Vanessa Tua Gonzalez, Yadira Miller, Dimaris Ferrer Roldan, and Luis Torres Ruiz. PRCAC terminated Rosendo Espada, Conrado Mercado Vargas, Vicente Marrero, and Wilfredo Rodriguez Morales during the January 18, 2005 layoff. All but Conrado Mercado Vargas ("Mercado") signed a separation agreement. The other six Plaintiffs were terminated separately from the January 18, 2005 layoff. None of them signed a separation agreement in connection with their termination.

The court has before it a motion for summary judgment filed by Defendants on April 28, 2006. See Docket No. 54. Plaintiffs opposed this motion on May 30, 2006. See Docket No. 59.

## II.   Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The moving party has the burden of establishing the nonexistence of a genuine issue of material fact. Celotex, 477 U.S. at 325. This burden has two components: (1) an initial burden of production that shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion that always remains on the moving party. Id. at 331. The moving party may discharge its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Id.

After the moving party makes this initial showing, the "burden shifts to the nonmoving party with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25). To meet this burden, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court must view the record and all reasonable inferences in the light most favorable to the nonmoving party. Id. If the court finds that some genuine factual issues remain, the court must deny the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 284 (1986).

**III.    Legal Analysis**

Defendants have moved for summary judgment on the grounds that: (1) the separation agreements signed by some Plaintiffs bar their claims; (2) Plaintiffs' termination did not constitute a mass layoff as required by the WARN Act; (3) Plaintiffs received compensation for any Law 80 indemnity; and (4) not all Defendants are proper parties to this case. Below, the court examines these arguments to determine whether Defendants have established that there is no genuine issue of material fact and that they are entitled to a judgment as a matter of law.

A. Separation Agreements

PRCAC terminated Plaintiffs Rosendo Espada ("Espada"), Vicente Marrero ("Marrero"), and Wilfredo Rodriguez Morales ("Rodriguez-Morales") on January 18, 2005 as part of its reduction-in-force plan. Shortly thereafter, these Plaintiffs signed a separation agreement waiving any claim or cause of action under any federal or Puerto Rico law, including claims arising from their employment, terms and conditions of employment or termination from employment. See

**Civil No. 05-1377 (GAG)**                                5

Exhibit A, Docket No. 54. Defendants claim that these separation agreements bar Plaintiffs Espada, Marrero, and Rodriguez-Morales from asserting any WARN Act or Law 80 claims. Plaintiffs maintain that these separation agreements are not valid because they were not reached in a knowing and voluntary manner.

At the outset, the court notes that Law 80 contains a provision establishing that the right to compensation is unwaiveable. See P.R. Laws Ann. tit. 29 § 185i. This means that the separation agreements at issue, even if valid, do not waive any potential Law 80 claims which the agreements' signatories may have. The question that remains is, thus, whether Plaintiffs Espada, Marrero, and Rodriguez-Morales validly waived their WARN Act claims.

Waiver and releases are affirmative defenses on which the employer bears the burden. Fed.R.Civ.P. 8(c). To meet this burden, the employer must establish that the release was knowing and voluntary. Smart v. Gillete v. Gillete Co. Long-Term Disability Plan, 70 F.3d 173, 181 (1st Cir. 1995). To determine the validity of a release, the First Circuit has adopted a "totality of the circumstances" approach. Id. To aid in this inquiry, the First Circuit looks to a non-exclusive set of six factors. These factors are: (1) plaintiff's education and business experience; (2) the respective roles of the employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) time employee had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver. Id. at 181 n. 3. Not all factors must be present before a release can be enforced. Melanson v. Browning-Ferris Industries, Inc., 281 F.3d 272, 276 (1st Cir. 2002). The essential question is whether, in the totality of the circumstances, the individual's waiver can be characterized as "knowing and voluntary." Id.

The first two factors are neutral in this case. The educational background of Plaintiffs Espada, Marrero, and Rodriguez-Morales cannot be gleaned from the face of the complaint. Likewise, although the release was drafted by Defendants, there is no allegation that the terms are somehow inequitable. See Morais v. Cent. Beverage Corp. Union Employees' Supplemental Ret. Plan, 167 F.3d 709, 714 (1st Cir. 1999) ("Although the document was prepared by the company, there is neither evidence about how its contents were developed nor evidence suggesting that the terms were unfair.").

**Civil No. 05-1377 (GAG)**                                        6

The last four factors favor a finding that Plaintiffs Espada, Marrero, and Rodriguez-Morales knowingly and voluntarily waived their WARN Act claims. The agreements were written in simple and clear language. Plaintiffs Espada, Marrero, and Rodriguez-Morales had unlimited time to study the agreements. See Docket No. 54-7 at ¶ 15. These Plaintiffs also had the advice of attorney Chicon, legal counsel to Puerto Rico's Department of Labor.[1] Chicon read the separation agreement with them and explained what each paragraph meant, its scope and all of the consequences of agreeing to the terms contained in each paragraph. See Docket No. 54-2 at ¶ 23. Finally, these Plaintiffs received valuable consideration for their releases: Espada - $2,268.58; Marrero - $2,390.43; Rodriguez-Morales - $1,492.90. See Exhibit A, Docket No. 54.

Despite these factors, Plaintiffs seek to invalidate the separation agreements on the ground that PRCAC obtained the agreements through misrepresentation and duress. The court need not decide these issues. "Even if a release is tainted by misrepresentation or duress, it is ratified if the releasor retains the consideration after learning that the release is voidable." Williams v. Phillips Petroleum Co., 23 F.3d 930, 937 (5th Cir. 1994) (finding that laid-off workers were precluded from bringing a WARN Act claim because they ratified releases by failing to return consideration which they received in connection with their execution of releases). Here, Plaintiffs Espada, Marrero, and Rodriguez-Morales did not return the consideration they received for executing the separation agreements. Thus, they ratified the agreements even if, *arguendo*, the agreements were not knowingly and voluntarily signed. This failure to return the consideration also defeats Plaintiffs' argument that Plaintiffs Espada, Marrero, and Rodriguez-Morale retracted from the separation agreements. See Widener v. Arco Oil & Gas Co., 717 F.Supp. 1211, 1217 (N.D.Tex. 1989) ("A party cannot be permitted to retain the benefits received under a contract and at the same time escape the obligations imposed by the contract."). Thus, the court finds that Plaintiffs Espada, Marrero, and

---

[1] The Department of Labor is an independent government entity charged with the protection of laborers' interests and welfare. See P.R. Laws Ann. tit. 3 § 305.

**Civil No. 05-1377 (GAG)**                                              7

Rodriguez-Morales validly waived their WARN Act claims.[2] Accordingly, the court dismisses with prejudice these Plaintiffs' WARN Act claims and their spouses' derivative claims.

B. WARN Act Claim

Seven of the remaining Plaintiffs in this case did not sign a separation agreement. Defendants have moved to dismiss their WARN Act claims on the ground that Plaintiffs' termination did not constitute a mass layoff as required by the WARN Act.

### 1. Mass Layoff

The WARN Act obligates certain employers to give workers 60 days' notice before a plant closing or mass layoff. 29 U.S.C. § 1201 et seq. An employer who fails to give timely notice is liable to terminated employees for back pay and benefits for each "day of violation," that is each day during which the employee had not received the required notice, to a maximum of 60 days. 29 U.S.C. § 2104(a)(1)(A) & (B). The purpose of the WARN Act is to "ensure that 'workers receive advance notice of plant closures and mass layoffs that affect their jobs.'" Kildea v. Electro-Wire Prods., Inc., 144 F.3d 400, 405 (6th Cir. 1998) (quoting Marques v. Telles Ranch, Inc., 131 F.3d 1331, 1333 (9th Cir. 1997)). Advance notice allows workers and their families transition time to adjust to the prospective loss of employment, seek and obtain alternative jobs and if needed, enter skill training or retraining that will allow them to successfully compete in the job market. 20 C.F.R. § 639.1(a).

Section 2101(a)(3) of the Act defines a "mass layoff" as a reduction in force that:

(A) is not the result of a plant closing; and
(B) results in an employment loss at the single site of employment during any 30-day period for-
(i)(I) at least 33 percent of the employees (excluding any part-time employees); and
(II) at least 50 employees (excluding any part-time employees); or
(ii) at least 500 employees (excluding any part-time employees); ...

U.S.C. § 2101(a)(3). A part-time employee is "an employee who is employed for an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required." 29 U.S.C. § 2101(a)(8).

---

[2] Three other Commonwealth courts who have examined the separation agreements at issue have also concluded that they are valid. See Docket Nos. 62-5, 63-5, 76-4.

Here, PRCAC terminated 71 regular employees, 11 temporary employees, and three part-time employees as part of its reduction-in-force plan. See Docket No. 54-2 ¶¶ 9, 10. At that time, PRCAC had a total of 228 employees. Id. at ¶ 11. The temporary employees that PRCAC fired worked under temporary contracts and had worked for the company for six months or less. Id. at ¶ 9. Because these temporary employees did not work for fewer than six months, they do not qualify as part-time employees. See 29 U.S.C. § 2101(a)(8). The part-time employees that PRCAC terminated worked on average 20 hours or less per week. See Docket No. 54-2 ¶ 9. As such, they are considered part-time employees for WARN Act purposes. See 29 U.S.C. § 2101(a)(8). Because part-time employees are not counted in determining whether a mass layoff has occurred, PRCAC's reduction-in-force plan affected 36% (82/228) of its workforce. This is above the 33% required by the WARN Act for a mass layoff to occur and to trigger its 60-day notice requirement.

Relying on section 2102(d) of the WARN Act, Plaintiffs argue that the percentage of employment loss is higher because Defendants terminated approximately 18 employees between October 2004 and January 17, 2005. See Docket No. 59-2 at ¶ 28. Additionally, PRCAC terminated another employee on March 1, 2005. See Docket No. 54-2 at ¶ 34. Section 2102(d) provides that "layoffs occurring in separate reduction actions may be aggregated into a "mass layoff" if each set of layoffs involves fewer workers than required by the two statutory thresholds and all layoffs occur within the same 90-day period." Oil, Chemical and Atomic Workers Intern. Union, Local 7-629 AFL-CIO v. RMI Titanium Company, 199 F.3d 881, 883 (6th Cir. 2000) (citing 29 U.S.C. § 2102(d)). A layoff meets the two statutory thresholds if it involves 33% of the employees and at least 50 employees. See 2101(a)(3)(B)(i). Because PRCAC reduction-in-force plan affected at least 33% of the workforce and 50 employees, the court will not aggregate employment losses outside the January 18, 2005 layoff. See Roquet v. Arthur Andersen LLP, 2004 WL 442628 * 4 (N.D.Ill. 2004) (holding that if a layoff meets the requirements of 2101(a)(3)(B)(i), which requires both an employment loss of 33 percent and a minimum of "at least 50 employees", then 2101(a)(3)(B)(ii) need not be addressed, and 2102(d) would not apply).

Here, Plaintiffs Dimaris Ferrer Roldan, Yadira Miller, Jorge Rodriguez Rodriguez, Willington Rodriguez Linares, Luis Torres Ruiz, and Vanessa Tua Gonzalez were terminated

**Civil No. 05-1377 (GAG)**  9

separately from the January 18, 2005 layoff. Because Section 2102(d) of the WARN Act is inapplicable, the court holds that the WARN Act does not cover these Plaintiffs.[3] See United Elec., Radio and Mach. Workers of America (UE) v. Maxim, Inc., 1990 WL 66578 *4 (D.Mass. 1990) (denying WARN Act coverage to distinct groups of laid off workers where one of the groups was larger than the minimum number specified in section 2101(a)(2) or (3)); Jones v. Kayser-Roth Hosiery, Inc., 748 F.Supp. 1276, 1284 (E.D.Tenn. 1990) (same). Accordingly, the court dismisses with prejudice the WARN Act claims of Plaintiffs Dimaris Ferrer Roldan, Yadira Miller, Jorge Rodriguez Rodriguez, Willington Rodriguez Linares, Luis Torres Ruiz and Vanessa Tua Gonzalez, and the derivative claims of their spouses. This leaves Plaintiff Mercado as the only Plaintiff with a viable WARN Act claim.

## 2. Recalled Employees[4]

To escape the WARN Act's notice requirement, Defendants contend that within six months of PRCAC's reduction-in-force plan, PRCAC offered reinstatement to 16 employees who had been terminated as part of the mass layoff. See Exhibit 54-6 at ¶ 6. Of the 16 employees that received offers, five accepted reinstatement. They are: Carlos Figueroa Moya, Paolo Galera Rivera, Dalixa Hernandez Valentin, Gerardo Rivera Mateo, and Roberto Vargas Soto. Id. The employees that did not return to work are: Luis Adames Milan, Suzette Davis, Erica Cruz Rodriguez, John Padin Garcia, Carlos Ramirez Castro, Wilfredo Rodriguez Morales, Raquel Santiago Crespo, Helena Gonzalez Valentin, Miriam Alvarez Cortes, Allan Cruz Roman, and Yovandavid Ferrao. Id. at ¶ 7. Defendants claim that because these sixteen employees received offers of reinstatement, they cannot be included as employment losses for purposes of determining whether a mass layoff occurred.

---

[3] The court notes that even if section 2102(d) applied in this case, Plaintiffs have not submitted any evidence from which the court could conclude that PRCAC or CPRCTV terminated Plaintiffs Magda Frontanes Martinez, Vidal J. Gomez Diaz, Maria Iglesia Cordero, Lymarie Lebron Flores, Carmen E. Lugo Nieves, Rose-Marie Nazario Bonet, and Jorge Rodriguez Rodriguez within 90 days of the January 18, 2005 layoff.

[4] Because Plaintiff Mercado is the only Plaintiff with a viable WARN Act claim, this analysis only pertains to Plaintiff Mercado.

**Civil No. 05-1377 (GAG)**                              10

Excluding these employees, Defendants maintain that PRCAC's reduction-in-force plan affected 29% (66/228) of its workforce. Because this is below the 33% required by the WARN Act, Defendants contend that PRCAC's reduction-in-force plan did not constitute a mass layoff and that the WARN Act's 60-day notice requirement was not triggered.

The WARN Act defines "employment loss" as ... "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period." 29 U.S.C. §2101(a)(6). Consistent with this definition, some courts have held that employees whose positions were terminated but were later rehired within six months did not suffer an employment loss. See Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1282 (8th Cir. 1996) (citing Oil, Chemical and Atomic Workers, Int'l Union Local 7-515, AFL-CIO v. Amer. Home Prods. Corp., 790 F.Supp. 1441 (N.D.Ind. 1992)). However, such rehire will be counted as an employment loss if the rehiring is a constructive discharge or other involuntary termination. 20 C.F.R. § 639.3(f)(2). For example, "[w]here employees are rehired into inferior positions under unfavorable terms and conditions, such rehirings may also lead to employment losses." Local 819, Intern. Broth. of Teamsters, AFL-CIO v. Textile Deliveries, Inc., 2000 WL 1357494 *5 (S.D.N.Y. 2000). Similarly, "a job offer which constitutes a constructive discharge constitutes an employment loss for purposes of WARN." Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16047 (Dep't of Labor April 20, 1989).

Here, PRCAC alleges that it rehired five former employees and offered employment to another 11. Plaintiffs maintain that PRCAC's purported rehiring and employment offers constitute a constructive discharge. In support thereof, Plaintiffs submit the following. PRCAC did not return the five allegedly rehired former employees to their original permanent positions, but rather to temporary positions with fewer benefits. See Exhibits 4-7 at ¶ 15, Docket No. 59. Similarly, PRCAC's employment offers to eight of its former employees contained materially inferior working conditions such as temporary work instead of permanent work, fewer or no benefits, and/or lower salaries. See Exhibits 9, 10, 12-17 at ¶ 15, Docket No. 59. In light of the above, the court finds that Plaintiffs have created a genuine issue of material fact as to whether PRCAC's purported rehiring

and employment offers constitute a constructive discharge as to at least 13 former employees. Even if the court assumes that PRCAC made comparable job offers to the remaining three former employees for which Plaintiffs did not submit any sworn statements, this would mean that PRCAC's reduction-in-force plan affected 35% (79/228) of its workforce. Given that this percentage is still above the 33% required by the WARN Act, the court finds that PRCAC's reduction-in-force plan constitutes a mass layoff that triggered the Act's 60-day notice requirement. Because Defendants do not dispute that Plaintiffs did not receive 60 days' notice before being terminated, the court finds that Plaintiff Mercado, the only Plaintiff who was terminated as part of the mass layoff and who did not sign a separation agreement, has a viable WARN Act claim.

C. Law 80 Claim

Law 80 is Puerto Rico's Wrongful Dismissal Act. It provides an employee who has been terminated without just cause with the exclusive remedy of a discharge indemnity payment, calculated on the basis of the employee's salary and years of service. P.R. Laws Ann. tit. 29 § 185a. PRCAC terminated Plaintiffs Espada, Mercado, Marrero, and Rodriguez-Morales during the January 18, 2005 layoff. All but Mercado signed a separation agreement and received a severance payment. See Exhibit A, Docket No. 54. Defendants allege that these severance payments were calculated using the formula for discharge indemnity provided in Law 80. Because Plaintiffs do not dispute that the severance payments comply with Law 80, the court dismisses with prejudice the Law 80 claims of Plaintiffs Espada, Marrero and Rodriguez-Morales, and the derivative claims of their spouses. See Soto v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints, 73 F. Supp.2d 116, 132 (D.P.R. 1999) (noting that a wrongful discharge claim under Law 80 must be dismissed when an employer pays an employee a termination pay equal or greater than the Law 80 indemnity).

Plaintiff Mercado, the only Plaintiff with a viable WARN Act claim, did not sign a separation agreement when PRCAC terminated him as part of its reduction-in-force plan. Moreover, Plaintiffs have presented a sworn statement by Plaintiff Mercado where he attests that he has not received any severance payment in connection with his termination. See Exhibit 1 at ¶ 13, Docket No. 59. In light of the above, the court finds that Plaintiff Mercado has a viable Law 80 claim.

Six other Plaintiffs potentially have Law 80 claims: Dimaris Ferrer Roldan, Yadira Miller, Jorge Rodriguez Rodriguez, Willington Rodriguez Linares, Luis Torres Ruiz, and Vanessa Tua Gonzalez. The court has dismissed these Plaintiffs' WARN Act claims because they were terminated separately from the January 18, 2005 layoff. See Section III.A.1. above. Because the undisputed evidence shows that these Plaintiffs were terminated at different times and by different employers, the court finds that these Plaintiffs' Law 80 claims do not share a common nucleus of operative facts with the remaining WARN Act claim of Plaintiff Mercado. As such, the court will not exercise supplemental jurisdiction over their Law 80 claims.[5] See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367(a). Accordingly, the court dismisses without prejudice the Law 80 claims of Plaintiffs Dimaris Ferrer Roldan, Yadira Miller, Jorge Rodriguez Rodriguez, Willington Rodriguez Linares, Luis Torres Ruiz and Vanessa Tua Gonzalez, and the derivative claims of their spouses.

D. Proper Defendants

Plaintiffs named five Defendants in the present complaint: CCC, CPRCTV, CPROC, PRCAC, and HMTF. See Docket No. 38. Relying on section 2101(b)(1) of the WARN Act, Defendants contend that all claims against CCC, CPRCTV, and CPROC should be dismissed because these Defendants were not responsible for giving notice to the Plaintiffs of the January 18, 2005 layoff. Section 2101(b)(1) provides that in the case of a partial or complete sale of an employer's business, the seller is responsible for providing notice of any plant closing or mass layoff which takes place up to and including the effective date of the sale. 29 U.S.C. § 2101(b)(1). The buyer is responsible for providing notice of any plant closing or mass layoff that takes place thereafter. Id. See also Wilson v. Airtherm Products, Inc., 436 F.3d 906, 909 (8th Cir. 2006) ("[T]he WARN Act creates a system that allocates notice responsibility between the seller of the business and the buyer of the business, and only the party actually causing employment loss due to a plant closing is required to provide WARN Act notice.").

---

[5] As per Plaintiffs' own admission, the court notes that Plaintiffs Jorge Rodriguez Rodriguez and Luis Torres Ruiz currently have Law 80 claims against Defendants pending in the Commonwealth Court of First Instance, Ponce Section. See Docket No. 59-2 at pp. 27-29.

1    Here, CCC owned CPRCTV and CPROC prior to December 28, 2004. See Docket No. 54-2 at ¶ 2. On that date, CCC sold CPRCTV to PRCAC, and CPRCTV merged into PRCAC. Id. at ¶ 4. Three weeks later, on January 18, 2005, PRCAC terminated Plaintiff Mercado as part of its reduction-in-force plan. Id. at ¶ 30. Because CCC's sale of CPRCTV to PRCAC preceded this reduction-in-force plan, the court finds that CCC, CPRCTV, and CPROC were not responsible under the WARN Act for providing notice to Plaintiff Mercado of the January 18, 2005 layoff. Hence, they are not proper Defendants in this case. See Air Transport Local 504, Transport Workers Union of Am., AFL-CIO v. Ogden Aviation Servs., 1998 WL 191297 *4 (E.D.N.Y. 1998) (finding that seller had no obligation under the WARN Act to provide notice to employees after sale).

Next, Defendants argue that all claims against HMTF should be dismissed because HMTF does not qualify as Plaintiffs' employer under the WARN Act. The WARN Act defines "employer" as any business enterprise that employs "(A) 100 or more employees, excluding part-time employees or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." 29 U.S.C. § 2101(a)(1). There is no dispute that PRCAC was the employer of some Plaintiffs. The question remains whether HMTF and PRCAC acted as a single business enterprise. The WARN Act does not define the term "business enterprise." Courts addressing the single employer issue consider "(1) state corporate law, (2) single employer theory under federal law, and (3) the WARN regulations." United Paperworkers Int'l Union, AFL-CIO, CLC, and United Paperworkers Int'l Union, AFL-CIO, CLC, Local 408 v. Alden Corrugated Container Corp., 901 F.Supp. 426, 437 (D.Mass 1995) (quoting Wholesale and Retail Food Distribution Local 63 v. Santa Fe Terminal Servs., Inc., 826 F.Supp. 326, 334 (C.D.Cal. 1993)). Accordingly, the court turns to these sources to determine whether HMTF and PRCAC acted as a single business enterprise.

                         1. Puerto Rico Corporate Law

Under Puerto Rico law, there is a presumption that a corporate entity is separate from its controlling entity. Fleming v. Toa Alta Development Corp., 96 D.P.R. 240, 243 (1968) (citing Cruz v. Ramirez, 75 D.P.R. 947, 954 (1954)). "Plaintiff may, however, pierce the corporate veil of a corporation 'by strong and robust evidence' showing the parent to have that degree of control over the subsidiary as to render the latter a mere shell for the former." Escude Cruz v. Ortho

**Civil No. 05-1377 (GAG)**                               14

Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir. 1980) (quoting San Miguel Fertilizer Corp. v. P.R. Drydock & Marine Terminals, 94 D.P.R. 424, 430 (1967)). The principal reasons that justify the piercing of a corporate veil are that the corporation is being used to sanction fraud, provide injustice, evade obligations, defeat public policy, justify inequity, protect fraud or defend crime. Colon v. Rinaldi, 2006 WL 3421862 *6 (D.P.R. 2006) (citing Diaz Aponte v. Comunidad San Jose, Inc., 130 D.P.R. 782, 788 (1992)). The burden to pierce the corporate veil lies on the party seeking to pierce the veil. Diaz Aponte, 130 D.P.R. at 800.

In this case, the evidence shows that an affiliate of HMTF owns PRCAC. See Docket No. 54-2 at ¶ 3. PRCAC's reduction-in-force plan was designed or implemented by: (1) Peter Kahelin, PRCAC's chief executive officer and a corporate officer from HMTF, (2) Edwin Stevenson, PRCAC's General Manager, (3) Nicole Rodriguez, PRCAC's Director of Operations, (4) Soraya Zapata, PRCAC's Customer Service Director, (5) Hiram Cruz, PRCAC's Sales Director, (6) Angela Miranda, PRCAC's Human Resources Director, and (7) O'Neill & Borges, PRCAC's legal counsel. See Exhibit 20, Interrogatory No. 12, Docket No. 59. The plan resulted from HMTF's interest in reducing PRCAC's operational costs. See Docket No. 54-2 at ¶ 45. No reasonable juror could look at this evidence and find that HMTF had a degree of control over PRCAC "as to render the latter a mere shell for the former." Escude Cruz, 619 F.2d at 905. Thus, the court cannot conclude that HMTF and PRCAC acted as a single business enterprise under Puerto Rico corporate law.

### 2. Federal Law

To determine whether separate corporations constitute a single employer, the First Circuit has applied the four factors set out in Radio & Television Broadcast Union v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 256 (1965) (per curiam): (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. Penntech Papers, Inc. v. N.L.R.B., 706 F.2d 18, 25 (1st Cir. 1983) (citing Soule Glass & Glazing Co. v. NLRB, 652 F.2d 1055, 1075 (1981)). No one of these factors is controlling, nor need all of them be present. Id.

Plaintiffs' evidence that PRCAC and HMTF's operations were interrelated consists of Defendants' admission that PRCAC's reduction-in-force plan resulted from HMTF's interest in

**Civil No. 05-1377 (GAG)**  15

reducing PRCAC's operational costs. See Docket No. 54-2 at ¶ 45. The court is not persuaded. HMTF may have established PRCAC's financial goals, but the undisputed evidence is that PRCAC's management developed the reduction-in-force plan. See Exhibit 20, Interrogatory No. 12, Docket No. 59. Furthermore, PRCAC and HMTF do not share administrative services, interchange equipment or personnel, or commingle finances. See Docket No. 54-2 at ¶ 43. Plaintiffs have failed, likewise, to create a genuine issue of material fact as to the second and third factors. PRCAC has its own management team, and HMTF is not involved in the day-today management or non-executive employment decisions of PRCAC. Id. at ¶ 44. Plaintiffs' evidence of common ownership, the fourth factor, consists of the fact that PRCAC is owned by an affiliate of HMTF. See Exhibit 20, Docket No. 59 at p. 5. This relationship is not sufficient for any reasonable factfinder to conclude that HMTF and PRCAC acted as a single business enterprise under federal law.

### 3. WARN Regulations

The WARN regulations provide a list of factors to be considered in the single business enterprise analysis. The pertinent WARN regulation provides:

> Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as part of the parent or contracting company depending upon the degree of their independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 639.3(a)(2).

Plaintiffs have failed to create a genuine issue of material fact as to four of these factors. They have not presented any evidence that HMTF and PRCAC had common directors, that HMTF exercised de facto control over PRCAC, that HMTF and PRCAC had a unity of personnel policies emanating from a common source, or that PRCAC's operations depended on HMTF. The only evidence presented by Plaintiffs is that PRCAC is owned by an affiliate of HMTF and that PRCAC's reduction-in-force plan resulted from HMTF's interest in reducing PRCAC's operational costs. See Exhibit 20, Docket No. 59 at p. 5; Docket No. 54-2 at ¶ 45. Based on this evidence, no reasonable juror could conclude that HMTF and PRCAC acted as a single business enterprise under the WARN regulations. Given that Plaintiffs have failed the single-employer tests under Puerto Rico corporate

**Civil No. 05-1377 (GAG)**               16

law, First Circuit federal law, and the WARN regulations, the court finds that Plaintiffs have not created a genuine issue of material fact as to whether HMTF was Plaintiffs' employer under the WARN Act. Accordingly, the court holds that HMTF is not a proper Defendant in this case. Thus, the only defendant left here is PRCAC.

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 54) is hereby **GRANTED IN PART** and **DENIED IN PART**. Plaintiff Mercado is the only remaining Plaintiff in this case. He has claims under the WARN Act and Law 80 against Defendant PRCAC, the only Defendant still a party to this action. The Law 80 claims of Plaintiffs Espada, Marrero, and Rodriguez-Morales are dismissed with prejudice. The Law 80 claims of Plaintiffs Dimaris Ferrer Roldan, Yadira Miller, Jorge Rodriguez Rodriguez, Willington Rodriguez Linares, Luis Torres Ruiz and Vanessa Tua Gonzalez are dismissed without prejudice.

**SO ORDERED**.

In San Juan, Puerto Rico this 31st day of July 2007.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge